## LAURENCE V. PARNOFF *v.* LAURA MOONEY
## (AC 32493)

DiPentima, C. J., and Lavine and Borden, Js.

Argued October 17—officially released December 13, 2011

*Christopher T. Richtarich*, with whom, on the brief, was *Thomas J. Weihing*, for the appellant (plaintiff).

*David P. Friedman* and *Ka Fei Wong*, for the appellee (named defendant).

*Opinion*

LAVINE, J. This appeal arises out of a dispute between two attorneys, the plaintiff, Laurence V. Parnoff, and the defendant, Laura Mooney, over their respective representation of the same client, Darcy Yuille,[1] on separate but overlapping matters. The plaintiff appeals from the judgment of the trial court, rendered following a jury trial, in favor of the defendant on the plaintiff's complaint and the defendant's counterclaim. On appeal, the plaintiff claims that the court improperly (1) denied his motions for a directed verdict, to set aside the verdict and for a new trial and for judgment notwithstanding the verdict, on the plaintiff's interference with a contract claim, (2) struck his claim for punitive damages for intentional interference with a contract, and (3) denied his motions for a directed verdict, to set aside the verdict and for judgment notwithstanding the verdict, on the defendant's quantum meruit counterclaim. We affirm the judgment of the trial court.

---

[1] Yuille also was an intervening defendant in the underlying action, but she is not a party to this appeal. We therefore refer to Laura Mooney as the defendant.

The jury reasonably could have found the following facts. In early 1996, Yuille retained the defendant to represent her before the workers' compensation commissioner in a claim for benefits in connection with injuries she incurred while working at Bridgeport Hospital (hospital). During her representation of Yuille, the defendant perceived what she believed to be bad faith conduct on the part of the hospital in relation to the workers' compensation claim. She began documenting the hospital's processing of Yuille's workers' compensation requests in preparation for a lawsuit to be brought in Superior Court at some point in the future.[2]

On September 16, 1998, Yuille met with the plaintiff to discuss bringing a wrongful discharge claim against the hospital for retaliating against Yuille for bringing the workers' compensation claim. Thereafter, the plaintiff decided to take the case. There was a misunderstanding among Yuille, the plaintiff and the defendant, however, as to what the plaintiff's representation of Yuille would entail. The plaintiff believed he was retained to pursue a wrongful termination case, including a claim for bad faith conduct. Yuille and the defendant, on the other hand, believed that the plaintiff only was pursuing a wrongful discharge claim and not an additional bad faith claim.

---

[2] The defendant initially attempted to refer the lawsuit for bad faith administration of Yuille's workers' compensation claim to the plaintiff, but, after the plaintiff failed to provide a timely response, the defendant and Yuille decided that the defendant would pursue this claim while, at the same time, pursuing Yuille's claim before the workers' compensation commissioner. Around the same time, the defendant also referred Yuille to a third attorney to pursue a wrongful discharge claim against the hospital on Yuille's behalf.

The plaintiff eventually contacted the defendant and, upon being informed that he no longer was needed, offered his services in the event that any of the defendant's "clients ever needed [the plaintiff's] services again." Shortly thereafter, the third attorney decided against taking the wrongful discharge case. The defendant then recommended that Yuille ask the plaintiff to represent her on the wrongful discharge claim.

In November, 1998, the plaintiff caused an action to be commenced against the hospital on Yuille's behalf. The complaint contained a wrongful discharge count alleging retaliation for the workers' compensation claim, and a reckless and intentional conduct count alleging bad faith delay in wage payments and medical treatment. Between 1998 and 2003, at the request of the plaintiff, the defendant provided the plaintiff with numerous documents and information that the defendant obtained during her representation of Yuille before the workers' compensation commissioner and in preparation for the bad faith administration claim.

On July 11, 2002, the plaintiff sent the defendant a letter requesting Yuille's medical bills and reports in preparation for a mediation session "regarding the bad faith claims . . . ." Upon reading the letter, the defendant realized for the first time that the plaintiff was pursuing a bad faith claim in addition to a wrongful discharge claim. After consulting with Yuille, the defendant caused an action to be filed against the hospital for bad faith administration of Yuille's workers' compensation claim.[3]

In November, 2002, the plaintiff entered into an agreement with the hospital on behalf of Yuille to arbitrate the claims brought in the 1998 complaint. Thereafter, the defendant sought to consolidate for arbitration Yuille's bad faith administration claim with the claims pursued by the plaintiff. Counsel for the hospital, however, refused to agree to consolidate, and the arbitration panel denied the defendant's request. The plaintiff and the defendant then agreed, in front of the arbitration panel, to divide their representation of

[3] On June 21, 2005, this court affirmed the judgment of the trial court in favor of the hospital on the claim pursued by the defendant on Yuille's behalf on the ground that the remedies provided by the Workers' Compensation Act exclusively governed Yuille's claim. See *Yuille* v. *Bridgeport Hospital*, 89 Conn. App. 705, 706–707, 874 A.2d 844 (2005).

Yuille with regard to the hospital's bad faith conduct. The plaintiff would pursue Yuille's bad faith conduct claim for acts that occurred prior to mid-December, 1999, in arbitration, while the defendant would pursue the bad faith conduct that occurred after mid-December, 1999, in Superior Court.

Despite the agreement, the plaintiff offered evidence at the arbitration proceeding of acts that occurred after December, 1999. On June 29, 2004, the arbitration panel awarded Yuille $1,096,032.93 on her bad faith claim but found in favor of the hospital on her wrongful discharge claim. The panel did not specify the time encompassed by the award. The defendant requested that the arbitration panel clarify the time period of the award. One of the panel members wrote to the defendant, stating that the panel would not clarify the decision in the absence of a request from the plaintiff, which the plaintiff refused to do. In August, 2004, Yuille and counsel for the defendant, attorney William F. Gallagher, separately requested that counsel for the hospital include the defendant's name on any settlement check in relation to the arbitration award. The defendant did not ask either individual to make the request on her behalf.

Thereafter, the plaintiff brought this action against the defendant, alleging interference with a contract, bad faith interference with a contract, defamation and bad faith defamation, and seeking punitive damages and attorney's fees. The defendant brought a counterclaim against the plaintiff, alleging, among other counts, a quantum meruit claim. After a nine day trial, during which approximately 100 exhibits were admitted into evidence, the jury returned a verdict for the defendant on the plaintiff's complaint. The jury also returned a verdict for the defendant on the quantum meruit counterclaim and awarded the defendant $4000. After denying the plaintiff's various posttrial motions, the court

rendered judgment in accordance with the verdict. This appeal followed.

## I

The plaintiff first claims that the court improperly failed to grant his motions for a directed verdict, to set aside the verdict and for judgment notwithstanding the verdict regarding the plaintiff's interference with a contract claim. The defendant argues that the plaintiff inadequately briefed this claim. We agree and, accordingly, decline to review the claim.

"[W]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited." (Internal quotation marks omitted.) *Paoletta* v. *Anchor Reef Club at Branford, LLC*, 123 Conn. App. 402, 406, 1 A.3d 1238, cert. denied, 298 Conn. 931, 5 A.3d 491 (2010).

In support of his first claim, the plaintiff's brief consists almost entirely of a chart listing seventeen trial exhibits, out of more than 100, and a short description of each. The plaintiff contends that these documents "support the plaintiff's claims of tortious interference by the defendant and [the] plaintiff's testimony in that regard." Following a few abstract assertions without any citation to authority or the record, the plaintiff provides a block quote describing the elements of a tortious interference claim. "Briefs submitted to this

court require rigorous legal analysis. It is not the role of this court to undertake the legal research and analyze the facts in support of a claim or argument when it has not been briefed adequately." *Mundell* v. *Mundell*, 110 Conn. App. 466, 478, 955 A.2d 99 (2008). We therefore decline to review this claim.

## II

The plaintiff next claims that the court improperly struck his claim for punitive damages for intentional interference with a contract. Because the plaintiff concedes that we should address this claim only if we reverse the trial court's judgment on the interference with a contract claim, we need not address this claim. See part I of this opinion.

## III

The plaintiff next claims that the court improperly failed to grant his motions for a directed verdict, to set aside the verdict and for judgment notwithstanding the verdict regarding the defendant's quantum meruit counterclaim. Specifically, the plaintiff argues that there was insufficient evidence that the defendant provided services from which the plaintiff benefited and that there was insufficient evidence of an implied contract between the parties. We disagree.

"The standard of review applied to directed verdicts is clear. A directed verdict is justified if, on the evidence the jury reasonably and legally could not have reached any other conclusion." *Gagne* v. *Vaccaro*, 255 Conn. 390, 400, 766 A.2d 416 (2001). This standard of review also applies to the plaintiff's motions to set aside the verdict and for judgment notwithstanding the verdict. See *Macchietto* v. *Keggi*, 103 Conn. App. 769, 778–79, 930 A.2d 817, cert. denied, 284 Conn. 934, 935 A.2d 151 (2007). "A determination of a quantum meruit claim requires a factual examination of the circumstances

and of the conduct of the parties . . . that is not a task for an appellate court [but rather for the trier of fact]." (Internal quotation marks omitted.) *Stewart* v. *King*, 121 Conn. App. 64, 73, 994 A.2d 308 (2010).

"[Q]uantum meruit [is a form] of the equitable remedy of restitution by which a plaintiff may recover the benefit conferred on a defendant in situations where no express contract has been entered into by the parties. . . . [It is] available to a party when the trier of fact determines that an implied contract for services existed between the parties, and that, therefore, the plaintiff is entitled to the reasonable value of services rendered." (Citation omitted; internal quotation marks omitted.) Id., 72–73. The implied contract, however, does not have to be one implied in fact. See *Gagne* v. *Vaccaro*, supra, 255 Conn. 401. Rather, it may be an implied in law contract. Cf. id. "In distinction to an implied [in fact] contract, a quasi [or implied in law] contract is not a contract, but an obligation which the law creates out of the circumstances present, even though a party did not assume the obligation, and may not have intended but in fact actually dissented from it. . . . *It is based on equitable principles* to operate whenever justice requires compensation to be made. . . . With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed to examine the circumstances and the conduct of the parties and apply this standard." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Bershtein, Bershtein & Bershtein, P.C.* v. *Nemeth*, 221 Conn. 236, 242, 603 A.2d 389 (1992).

On the basis of our review of the record, we agree with the trial court that there was sufficient evidence from which the jury reasonably could have found that the plaintiff benefited from the defendant's assistance.

The defendant testified that she carefully documented the bad faith conduct of the hospital, which she would not have done if she did not intend to pursue a bad faith claim on Yuille's behalf, and that she provided the plaintiff with this information at his request.[4] We conclude, considering the circumstances and conduct of the parties, that a reasonable jury could find that an implied in law contract existed. We therefore conclude that the court properly denied the plaintiff's motions.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] For example, the plaintiff requested that the defendant bring her file to a meeting with the plaintiff and the plaintiff's expert, and at the meeting the plaintiff made copies of the file. Additionally, the plaintiff requested that the defendant testify at an arbitration hearing as to Yuille's reactions to the delayed wage payments and medical treatment, which the defendant did.