ESPINOSA, J.
**507 In this appeal, we are asked to decide whether an attorney who knowingly appropriated client funds, but did not intend to do so wrongly, "knowingly misappropriated" those funds and is therefore subject to mandatory disbarment pursuant to Practice Book § 2-47A.[1] The plaintiff, Disciplinary Counsel, appeals from the judgment of the Appellate Court, which affirmed the judgment of the trial court reprimanding **508 the defendant, Laurence Parnoff, rather than disbarring him pursuant to § 2-47A. Disciplinary Counsel v. Parnoff , 158 Conn.App. 454, 482, 119 A.3d 621 (2015). The plaintiff contends that the trial court improperly interpreted § 2-47A to mandate disbarment only if an attorney appropriates client funds knowingly and with the wrongful intent to steal them. Regardless of the defendant's intent, the plaintiff claims, the defendant's knowledge that the funds he appropriated were disputed is sufficient to disbar him. We conclude that § 2-47A mandates disbarment only when an attorney misappropriates a client's funds both knowingly and intentionally-that is, when an attorney steals from his or her client. Accordingly, we affirm the judgment of the Appellate Court.
This disciplinary action originates from a twelve year old fee dispute that resulted in several actions and various appeals. The facts and procedural history underlying these actions are set forth in substantial detail in Disciplinary Counsel v. Parnoff , supra, 158 Conn.App. at 454, 119 A.3d 621, Disciplinary Counsel v. Parnoff , Superior Court, judicial district of Fairfield, Docket No. CV-12-6031943S, 2013 WL 5614736 (September 19, 2013), Parnoff v. Yuille , 139 Conn.App. 147, 57 A.3d 349 (2012), cert. denied, 307 Conn. 956, 59 A.3d 1192 (2013), and Parnoff v. Mooney , 132 Conn.App. 512, 35 A.3d 283 (2011). We summarize *1225 those facts and the relevant procedural history reflected in the record that are necessary to an understanding of the present case.
Darcy Yuille had been employed by Bridgeport Hospital (hospital) until a work-related injury led to her termination. Disciplinary Counsel v. Parnoff , supra, 158 Conn.App. at 457, 119 A.3d 621. In 1996, Yuille retained Attorney Laura Mooney to represent her before the Workers' Compensation Commission on a claim for benefits in connection with her injuries. Parnoff v. Mooney , supra, 132 Conn.App. at 514, 35 A.3d 283. During Mooney's representation of Yuille, **509 Mooney observed bad faith conduct by the hospital in its handling of the workers' compensation claim. Id. Mooney attempted to refer Yuille's action against the hospital, which claimed that the hospital had handled Yuille's workers' compensation claim in bad faith, to the defendant. Id., at 514, 35 A.3d 283 n.2. After the defendant "failed to provide a timely response," Mooney decided to undertake the action herself, in addition to undertaking Yuille's workers' compensation claim. Id. The defendant eventually contacted Mooney and Mooney referred Yuille to the defendant for a separate claim against the hospital alleging wrongful discharge. Id.
In 1998, after Mooney brought the bad faith action, Yuille also retained the defendant to represent her in a bad faith and wrongful discharge action against the hospital. Id., at 515, 35 A.3d 283. Mooney was initially unaware of the defendant's representation of Yuille in the bad faith and wrongful discharge action because Mooney believed that he was merely retained to pursue the wrongful discharge claim. Id., at 514-15, 35 A.3d 283. In retaining the defendant, Yuille entered into an agreement that provided the defendant with a contingency fee of 40 percent of gross receipts from the claim. Disciplinary Counsel v. Parnoff , supra, 158 Conn.App. at 457, 119 A.3d 621. On Yuille's behalf, the defendant commenced the action against the hospital in November, 1998. Parnoff v. Mooney , supra, 132 Conn.App. at 515, 35 A.3d 283.
In 2002, the defendant entered into an agreement with the hospital on Yuille's behalf to submit her claim to binding arbitration. Disciplinary Counsel v. Parnoff , supra, 158 Conn.App. at 457, 119 A.3d 621. After learning of the impending arbitration proceeding-and discovering the overlapping representation-Mooney filed an appearance in the action against the hospital, which the defendant had commenced, and appeared at the arbitration proceeding, over the objection of the hospital. Id. Yuille **510 was awarded approximately $1.1 million as a result of the binding arbitration proceeding. Id., at 458, 119 A.3d 621.
In August, 2004, shortly after the arbitration award, Yuille questioned the defendant's fee agreement, claiming that the 40 percent contingency fee was excessive because it violated General Statutes § 52-251c (b),[2] Connecticut's fee cap statute, *1226 and that a portion of the defendant's fee should have been allocated to Mooney. Id., at 458-60, 119 A.3d 621. After receiving the defendant's closing statement indicating that his fee amounted to $438,413.17, Yuille authorized the defendant to take $125,000 toward his fee, and to place the remainder of the 40 percent fee in escrow until they could agree on a resolution. Id., at 458, 119 A.3d 621. After taking $125,000 toward his fee, the defendant made various disbursements in connection with the arbitration, placing $313,413.17-the remainder of the disputed 40 percent contingency fee-into a certificate of deposit account (CD) with Chase Bank as escrow, and paying Yuille the balance of the award. Id., at 460, 119 A.3d 621.
The defendant and Yuille were unable to resolve the fee dispute, and, in January, 2005, the defendant filed an action against Yuille for breach of contract, unjust enrichment, and bad faith. Id. The defendant also filed a separate action against Mooney for, among other claims, tortious interference with his agreement with Yuille. Id., at 459, 119 A.3d 621.
**511 The cases against Mooney and Yuille were consolidated and tried to a jury. Id., at 461, 119 A.3d 621. On May 20, 2010, the jury returned a verdict for the defendant against Yuille on the defendant's breach of contract claims, and against the defendant on all other claims. Id. The court rendered judgment in accordance with the verdict, and awarded the defendant a total of $252,044.27 for compensatory damages, interest, and punitive damages.
The defendant notified Chase Bank not to renew the CD holding the disputed funds, causing it to mature. The defendant then transferred the funds into his personal savings account. Id., at 462, 119 A.3d 621. This redemption occurred on July 26, 2010, approximately five and one-half years after the funds had been placed into escrow. At the time of the transfer, the CD account contained $363,960.87. Id.
During the appeal from the judgment of the trial court, Yuille discovered that the defendant was no longer holding the funds in escrow, and filed a grievance against him, alleging that he had violated the Rules of Professional Conduct by transferring and commingling the funds. Id., at 456, 468, 119 A.3d 621. A reviewing committee of the Statewide Grievance Committee subsequently found by clear and convincing evidence that the defendant had violated rule 1.15 (f) of the Rules of Professional Conduct.[3] Id., 456-57. In order to determine what disciplinary action should be taken, the reviewing committee directed the plaintiff to file a presentment with the Superior Court pursuant to Practice Book § 2-47A. Id., at 457, 119 A.3d 621.
**512 During the presentment before the trial court, the defendant testified that he believed he was entitled to the funds because Yuille had no interest in them other than to pay Mooney's legal fee. Id., at 475, 119 A.3d 621. Yuille had testified, as part of her special defense during the breach of contract action, that if the defendant resolved matters with Mooney by paying Mooney a portion of the fee, Yuille would *1227 then be willing to give the defendant his fee.[4] Id., at 461, 119 A.3d 621. At the presentment, the defendant testified that these statements indicated that Yuille's only interest in the escrowed funds was to pay Mooney and, therefore, Yuille had waived any challenge she had to the disputed funds. Id., at 475, 119 A.3d 621. Further, the defendant testified that he believed he was entitled to the funds because Yuille did not pursue a counterclaim or intervening complaint sufficient to entitle her to affirmative relief in the breach of contract action, and her special defense similarly did not entitle her to affirmative relief. Accordingly, the defendant claimed that because he believed Yuille had no interest in the funds other than to pay Mooney, he was entitled to the funds and he was therefore justified in having them moved to his personal account. Notwithstanding the defendant's testimony regarding his subjective belief as to his entitlement to the funds, the plaintiff argued that the defendant violated rule 1.15 (f) of the Rules of Professional Conduct and also was subject to mandatory disbarment because he knowingly misappropriated client funds in violation of Practice Book § 2-47A. Id., at 463, 119 A.3d 621.
The trial court found by clear and convincing evidence that the defendant violated rule 1.15 (f) of the Rules of Professional Conduct by failing to maintain **513 the disputed fee in escrow and that his "belief that Yuille would be satisfied once Mooney was paid was erroneous and unreasonable given the totality of the circumstances." Despite this violation, the trial court also found that the defendant did not knowingly misappropriate those funds. Specifically, the trial court found that the defendant's "failure to escrow the funds ... was not a reflection of any lack of integrity on his part and that he did not act wilfully or with intent to deceive Yuille." Essentially, while the defendant appropriated the funds knowingly, he had "engaged in this conduct negligently," without deceptive intent. The trial court "set forth the protracted, lengthy, very confusing, and tortured history of the fee dispute," and found that the defendant's mistaken belief that Yuille had no personal interest in the funds other than to pay Mooney, meant "the defendant acted unreasonably but not dishonestly, and without an intent to deceive." Disciplinary Counsel v. Parnoff , supra, 158 Conn.App. at 466, 119 A.3d 621. Because the trial court found that the defendant did not act with the requisite intent, it determined that disbarment pursuant to Practice Book § 2-47A was not appropriate and issued a formal reprimand against the defendant. Id., at 463-64, 119 A.3d 621.
The plaintiff appealed to the Appellate Court, which affirmed the judgment of the trial court. Id., at 482, 119 A.3d 621. The Appellate Court held that the trial court properly interpreted Practice Book § 2-47A, by considering the defendant's intent because "the 'knowing' requirement [in § 2-47A ] relates to whether the attorney knows in fact that the property did not belong to him when it was misappropriated," not merely that an attorney had knowingly transferred the funds. Id., at 468, 119 A.3d 621. This certified appeal followed. Disciplinary Counsel v. Parnoff, 319 Conn. 905, 122 A.3d 1279 (2015).
The plaintiff claims that Practice Book § 2-47A mandates disbarment when an *1228 attorney: (1) appropriates **514 client funds; (2) does so knowingly; and (3) does so knowing no agreement or court order existed regarding the appropriation of the funds. In the plaintiff's view, a finding regarding the defendant's intent is unnecessary. We disagree.
Whether the Appellate Court correctly interpreted a rule of practice is a question of law over which our review is plenary. Wiseman v. Armstrong , 295 Conn. 94, 99, 989 A.2d 1027 (2010). Our interpretation of the rules of practice, like our interpretation of statutes, is guided by well established principles regarding legislative intent. See Kasica v. Columbia , 309 Conn. 85, 93, 70 A.3d 1 (2013) (explaining plain meaning rule under General Statutes § 1-2z and setting forth process for ascertaining legislative intent); see also Commissioner of Social Services v. Smith , 265 Conn. 723, 733-34, 830 A.2d 228 (2003) ("[t]he interpretive construction of the rules of practice is to be governed by the same principles as those regulating statutory interpretation").
As required by § 1-2z we begin with the text of the rule of practice. Practice Book § 2-47A provides: "In any disciplinary proceeding where there has been a finding by a judge of the superior court that a lawyer has knowingly misappropriated a client's funds or other property held in trust, the discipline for such conduct shall be disbarment for a minimum of twelve years." (Emphasis added.)
The phrase "knowingly misappropriated" is not defined in Practice Book § 2-47A or elsewhere in the rules of practice. Because the rules of practice do not provide guidance, we look to related provisions. Rule 1.0 (g) of the Rules of Professional Conduct define " '[k]nowingly' " as "denot [ing] actual knowledge of the fact in question." We observe that General Statutes § 53a-3 of the Penal Code also offers guidance. Section 53a-3 (12) provides: "A person acts 'knowingly' with **515 respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists ...." A person, therefore, acts knowingly when he or she has actual knowledge or awareness of the nature of the act.
The term "misappropriated" is not defined in the rules of practice or in any related provisions, thus, in accordance with General Statutes § 1-1 (a), we look to its common usage.[5] "To ascertain that usage, we look to the dictionary definition of the term." (Internal quotation marks omitted.) Potvin v. Lincoln Service & Equipment Co. , 298 Conn. 620, 633, 6 A.3d 60 (2010). Misappropriate is defined as "[t]o appropriate wrongly .... To appropriate dishonestly for one's own use; embezzle.... To use illegally." (Emphasis added.) American Heritage College Dictionary (4th Ed. 2007) p. 887. It is clear that, because the definition of misappropriate incorporates the concepts of wrongfulness, dishonesty, and embezzlement-all of which generally require intent-the term misappropriate inherently includes an element of intent. Specifically, the term "misappropriate" incorporates an intent to wrongfully take the property of another-to steal.
The definition of misappropriate is uncannily similar to the definition of larceny in General Statutes § 53a-119, which provides in relevant part that "[a] person *1229 commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes , obtains or withholds such property from an owner. Larceny includes, but is not limited to ... Embezzlement .... Obtaining **516 property by false pretenses .... Theft of services.... Receiving stolen property .... Library theft .... Conversion of leased property.... Theft of utility service.... Theft of motor fuel...." (Emphasis added.) The commission's comment to § 53a-119 provides in relevant part that "[t]his definition ... is meant to encompass the myriad ways in which property may be stolen." Commission to Revise the Criminal Statutes, Penal Code Comments, Conn. Gen. Stat. Ann. § 53a-119 (West 2012), commission comment, p. 108. With respect to the intent element of larceny, the Appellate Court has observed that "[a] specific intent to deprive or to misappropriate is an essential element of larceny." State v. Pulley , 46 Conn.App. 414, 418, 699 A.2d 1042 (1997).
By contrast, the term "appropriate" is defined as "[t]o take possession of or make use of exclusively for oneself, often without permission." American Heritage College Dictionary, supra, at p. 70. The definition of the term "appropriate," unlike that of "misappropriate," does not include an inherently wrongful or dishonest intent, and certainly is not consistent with the concept of theft. If the drafters of the rules of practice intended to require merely a "knowing" mental state, without an element of intent as the plaintiff contends, they would have used the word "appropriate" instead of the word "misappropriate." Their decision not to do so is telling. An attorney, therefore, can be said to knowingly misappropriate funds when the attorney: (1) appropriates funds; (2) does so knowing that a client claims to have an interest in them; and (3) does so with the intent to steal the funds or otherwise take them wrongfully, dishonestly, or illegally.
On the basis of the trial court's factual findings, as set forth in this opinion, the defendant's transfer of funds constituted an appropriation that he undertook knowingly. The trial court found, however, that the **517 long and tortuous procedural history of the parties' fee dispute contributed to the defendant's unreasonable but subjective belief that he was entitled to the disputed funds and no longer was required to maintain them in escrow.[6] Put another way, the defendant appropriated client funds, did so knowingly, but did not do so with any intent to steal the escrowed funds or otherwise take them wrongfully, dishonestly, or illegally. The transfer did not constitute theft or larceny. Accordingly, because the defendant did not intend to steal from his client he did not act with the intent necessary to constitute a misappropriation and, therefore, is not subject to mandatory disbarment pursuant to Practice Book § 2-47A.
The plaintiff contends that New Jersey case law should inform our decision in the present case because the 2007 commentary to Practice Book § 2-47A states that § 2-47A is "a codification of the 'Wilson rule'," as set out in In re Wilson , 81 N.J. 451, 409 A.2d 1153 (1979).[7] In Wilson , the Supreme *1230 Court of New Jersey defined " 'misappropriation' " as "any unauthorized use by the lawyer of clients' funds entrusted to him, including not only stealing, but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom." Id., 455, 409 A.2d 1153 n.1. Specifically, the plaintiff argues that this definition, and the case law that interpreted it, essentially stand for the "hard line" proposition that any time an attorney **518 appropriates client funds, the attorney's subjective belief as to his entitlement to those funds is irrelevant in determining whether the attorney committed a knowing misappropriation. The Appellate Court agreed with the plaintiff's assertion that Wilson and its progeny are instructive in interpreting § 2-47A, but distinguished them from the present case because those cases concerned the related but distinct question of whether an attorney's subjective intent to merely borrow client funds is a mitigating factor in determining when mandatory disbarment is proper. Disciplinary Counsel v. Parnoff , supra, 158 Conn.App. at 470-73, 119 A.3d 621.
In holding that in order to be subject to mandatory disbarment pursuant to Practice Book § 2-47A, an attorney must knowingly and intentionally steal client funds, we reject the definition of "knowing misappropriation" from Wilson , which resembles strict liability, and the New Jersey case law that flows from it. In re Wilson , supra, 81 N.J. at 455 n.1, 409 A.2d 1153. In addition to being inharmonious with our statutory construction of "knowingly misappropriated," such a standard would impose a severe punishment-that of mandatory disbarment for a minimum of twelve years-on attorneys for conduct that had been undertaken less than intentionally and, further, would create a rigid rule, robbing the trial court of its discretion to fashion sanctions properly suited to the offending attorney's background, intent, and mitigating or aggravating circumstances.
The judgment of the Appellate Court is affirmed.
In this opinion the other justices concurred.

Practice Book § 2-47A provides: "In any disciplinary proceeding where there has been a finding by a judge of the superior court that a lawyer has knowingly misappropriated a client's funds or other property held in trust, the discipline for such conduct shall be disbarment for a minimum of twelve years."
Although Practice Book § 2-47A has been amended since the events underlying this appeal by the addition of the phrase "for a minimum of twelve years" after the word "disbarment," that amendment has no bearing on the merits of this appeal. In the interest of simplicity, all references to Practice Book § 2-47A in this opinion are to the version appearing in the 2016 Practice Book. See Disciplinary Counsel v. Parnoff, 158 Conn.App. 454, 463 n.2, 119 A.3d 621 (2015).

General Statutes § 52-251c (b) provides in relevant part: "In [a] contingency fee agreement such fee ... shall not exceed an amount equal to a percentage of the damages awarded and received by the claimant or of the settlement amount received by the claimant as follows: (1) Thirty-three and one-third per cent of the first three hundred thousand dollars; (2) twenty-five per cent of the next three hundred thousand dollars; (3) twenty per cent of the next three hundred thousand dollars; (4) fifteen per cent of the next three hundred thousand dollars; and (5) ten per cent of any amount which exceeds one million two hundred thousand dollars."
Although § 52-251c has been amended since the events underlying this appeal; see, e.g., Public Acts 2005, No. 05-275, § 1; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

Rule 1.15 (f) of the Rules of Professional Conduct (2015) provides: "When in the course of representation a lawyer is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute."
All references herein to rule 1.15 (f) are to the version set forth in the 2015 Practice Book.

During trial, Yuille testified, as part of her special defense, that "[the defendant] would need to resolve matters with Mooney and that she would then be willing to give [the defendant] his fee; she also testified, when asked if she was at the trial to help Mooney, that she was also trying to get her own fee dispute resolved." (Internal quotation marks omitted.) Disciplinary Counsel v. Parnoff, supra, 158 Conn.App. at 461, 119 A.3d 621.

General Statutes § 1-1 (a) provides: "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly."

The plaintiff also appears to contend that the trial court erred in finding that the defendant did not demonstrate any lack of integrity, and did not act with any intent to deceive Yuille. To the extent that the plaintiff may be understood to claim the trial court's findings were clearly erroneous, we disagree.

The 2007 commentary to Practice Book § 2-47A provides in relevant part: "The above rule is a codification of the 'Wilson ' rule. In In re Wilson, [supra, 81 N.J. at 451, 409 A.2d 1153], the New Jersey Supreme Court articulated a rule that the universal response in cases of knowing misappropriation of clients' money should, without exception, be disbarment...."