******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

## SHERI SPEER *v.* DONNA SKAATS
### (AC 46047)

Elgo, Suarez and Bear, Js.

*Syllabus*

The plaintiff sought injunctive relief and to recover damages from the defendant attorney for abuse of process. The defendant represented a third party, S Co., in a foreclosure action that related to the plaintiff's personal residence. In the present case, the plaintiff alleged that, inter alia, five years after S Co. was defaulted in the foreclosure action for failure to appear, the defendant filed an appearance in the foreclosure action on S Co.'s behalf and then proceeded to file numerous motions, notices, and objections for, inter alia, the purpose of causing annoyance and distress to the plaintiff. The trial court granted the defendant's motion to dismiss, finding that it lacked subject matter jurisdiction because the plaintiff had failed to establish that she was aggrieved, and, therefore, she did not have standing to bring the action. On the plaintiff's appeal to this court, *held* that the trial court erred in granting the defendant's motion to dismiss because it improperly determined that it lacked subject matter jurisdiction over the plaintiff's action: the plaintiff plainly alleged that the defendant had made use of a legal process, that she did so primarily to accomplish purposes for which the process was not designed, and that those purposes were detrimental to the plaintiff; moreover, the factual allegations in the plaintiff's complaint, when viewed in the light most favorable to her as the pleader and construed both broadly and realistically, sufficiently established classical aggrievement, as the allegations were sufficient to demonstrate both the possibility that the plaintiff had a specific, personal, and legal interest in the defendant's conduct in the foreclosure action and the possibility that such interest had been specially and injuriously affected by the defendant's conduct, and, consequently, the trial court incorrectly determined that the plaintiff lacked standing to bring the action; accordingly, this court reversed the judgment of the trial court and remanded the case for further proceedings.

Argued January 4—officially released June 25, 2024

*Procedural History*

Action to recover damages for abuse of process, and for other relief, brought to the Superior Court in the judicial district of New London, where the court, *Goodrow, J.*, granted the defendant's motion to dismiss and

rendered judgment thereon, from which the plaintiff appealed to this court. *Reversed*; *further proceedings*.

*Sheri Speer*, self-represented, the appellant (plaintiff).

*Opinion*

SUAREZ, J. The plaintiff, Sheri Speer, appeals from the judgment of the trial court, *Goodrow*, *J.*, dismissing the civil action brought by her against the defendant, Donna Skaats.[1] The plaintiff claims that, in dismissing the action, the court erred in concluding that it lacked subject matter jurisdiction because she was not aggrieved and, thus, lacked standing to bring the action. The plaintiff also claims that the court, *Spallone*, *J.*, erred in "denying [her motion for] summary judgment."[2] We agree with the plaintiff's first claim and, therefore, reverse the judgment of the trial court.

With respect to the claims raised in this appeal, the record reflects the following relevant procedural history. In August, 2019, the plaintiff commenced the underlying civil action against the defendant, a member of the Connecticut bar, in connection with the defendant's representation of a third party, Seaport Capital Partners, LLC (Seaport), in an action brought by Deutsche Bank National Trust Company to obtain a judgment of foreclosure with respect to the plaintiff's personal residence (foreclosure action). The plaintiff alleged that, in the foreclosure action, Seaport was "an

---

[1] The plaintiff also appeals from the court's denial of her motion to reconsider the judgment of dismissal. In this appeal, however, the plaintiff does not raise any claims of error that are specifically related to the court's denial of her motion to reconsider.

[2] The plaintiff appeared before both the trial court and this court as a self-represented litigant. The defendant did not file a brief in this appeal. Consistent with an order of this court, dated September 19, 2023, we consider the merits of this appeal on the basis of the plaintiff's brief and appendix, the record as defined by Practice Book § 60-4, and the arguments advanced by the plaintiff during oral argument before this court.

alleged lienholder" who had recorded a property interest with respect to the real property. The plaintiff further alleged that, on November 17, 2018, five years after Seaport was defaulted for its failure to appear in the foreclosure action, the defendant entered an appearance on Seaport's behalf, however, "[t]he defendant never entered into an attorney-client agreement for representation in the [foreclosure] action with Seaport." The plaintiff also alleged that "Seaport never authorized the defendant to appear or litigate on its behalf in the [foreclosure] action."

In the plaintiff's single count complaint, she alleged: "Between November 17, 2018, and July 1, 2019, the defendant filed numerous motions, notices, and objections on behalf of Seaport . . . [1] without its authorization, which constituted the employment of a legal process . . . [2] to cause annoyance, alarm, embarrassment, and distress on the part of the plaintiff, and promises to do so in the future to her irreparable harm, which is not the proper use of the legal processes and procedures employed by the defendant in the name of Seaport . . . [3] to increase the costs the plaintiff in the [foreclosure] action would charge or assess during the litigation, which would be charged to the [present] plaintiff, and promises to do so in the future to her irreparable harm, which is not the proper use of the legal processes and procedures employed by the defendant in the name of Seaport . . . [4] to obstruct, thwart, and otherwise impair any possibility that the plaintiff could enter into a modification agreement to save her home from foreclosure, and promises to do so in the future to her irreparable harm, which is not the proper use of the legal processes and procedures employed by the defendant in the name of Seaport . . . [and (5)] to prevent the plaintiff from taking any action to defend against the [foreclosure] action, with the

objective of rendering the plaintiff homeless, and promises to do so in the future to her irreparable harm, which is not the proper use of the legal processes and procedures employed by the defendant in the name of Seaport. . . .

"None of the filings made by the defendant in the [foreclosure] action relate[s] at all in any way to the claims of the plaintiff [in the foreclosure action] or the defenses alleged to the [foreclosure] action. . . .

"Seaport has alleged no defense to the [foreclosure] action, has no defense to the [foreclosure] action, and was defaulted for failure to plead. . . .

"Seaport has alleged no claim in the [foreclosure] action and has no practical relief to obtain, that could be obtained, or that it has or had authorized the defendant to attempt to obtain on its behalf in the [foreclosure] action."

By way of relief, the plaintiff sought "[t]emporary and permanent injunctive relief against the defendant from engaging in the abuse of process as complained of herein in the [foreclosure] action or any proceedings related thereto" as well as damages, costs, and all other relief the court deems "fit and proper."

On October 23, 2019, the defendant filed a motion to dismiss and a supporting memorandum of law. On October 28, 2019, the plaintiff filed a memorandum of law in opposition to the motion to dismiss. On February 3, 2022, following a hearing, the court, *Spallone*, *J.*, denied the motion to dismiss.

On June 20, 2022, the defendant filed a second motion to dismiss as well as a supporting memorandum of law. The ruling on the defendant's second motion to dismiss is at issue in the present appeal. In its motion, the defendant argued, inter alia, that "[t]he plaintiff does not have standing to bring an action against the attorney

representing Seaport . . . .”[3] On June 22, 2022, the plaintiff filed a memorandum of law in objection to the motion to dismiss.

By order of October 28, 2022, the court, *Goodrow, J.*, granted the defendant's second motion to dismiss. The court stated: “[T]his action is dismissed due to lack of subject matter jurisdiction. . . . The crux of the plaintiff's complaint is that the plaintiff allegedly suffered an injury when the defendant represented Seaport . . . in a . . . [foreclosure] action in which the plaintiff in this case . . . was the defendant . . . . The plaintiff . . . alleges, in essence, that the defendant . . . acted without authority in holding herself out as counsel for Seaport . . . in the earlier [foreclosure] action. [The defendant] was counsel of record for [Seaport] in the earlier [foreclosure] action. . . . [T]he instant case is required to be dismissed due to the lack of standing by the plaintiff to bring the action and, therefore, the court's lack of subject matter jurisdiction. This court does not have subject matter jurisdiction based on the plaintiff's lack of standing. . . . Consistent with the court's policy of leniency to self-represented litigants, the court has construed the plaintiff's complaint broadly and realistically rather than narrowly and technically. . . . The plaintiff lacks standing to bring this action because she is not aggrieved, either classically or statutorily. . . . The plaintiff alleges that the defendant . . . illegally or without authority represented Seaport . . . in the prior [foreclosure] action. The facts alleged by the plaintiff do not include conduct that has injured, or will likely injure a specific, personal,

---

[3] The defendant also argued that the court should dismiss the present action in light of an order issued by the court against the plaintiff in an unrelated action that barred the plaintiff from filing any pleadings in cases in which Seaport was a party. The court, in granting the defendant's second motion to dismiss in the present case, concluded that, because Seaport was not a party to the present action, the defendant's reliance on the order was misplaced.

legal interest of the plaintiff. Because the plaintiff has established neither classical nor statutory aggrievement, she lacks standing to bring this action." (Citations omitted; internal quotation marks omitted.)

On November 7, 2022, the plaintiff filed a motion for reconsideration of the court's decision. On November 18, 2022, the defendant filed an objection to the motion to reconsider. On November 21, 2022, the court summarily denied the motion to reconsider and sustained the defendant's objection thereto. This appeal followed. Additional procedural history will be discussed as necessary.

I

First, the plaintiff claims that, in dismissing the action, the court erred in concluding that it lacked subject matter jurisdiction because she was not aggrieved and, thus, lacked standing to bring the action. We agree.

"A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . .

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . [When] a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause." (Citation omitted; internal quotation marks omitted.) *Derblom* v. *Archdiocese of Hartford*, 346 Conn. 333, 341–42, 289 A.3d 1187 (2023). "Trial courts addressing motions to dismiss for lack of subject matter jurisdiction pursuant to [Practice Book § 10-30] may

encounter different situations, depending on the status of the record in the case. . . . [L]ack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. . . . [If] a trial court decides a jurisdictional question raised by a pretrial motion to dismiss on the basis of the complaint alone, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *307 White Street Realty, LLC* v. *Beaver Brook Group, LLC*, 216 Conn. App. 750, 763, 286 A.3d 467 (2022).

"When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . . Standing requires no more than a colorable claim of injury; a [party] ordinarily establishes . . . standing by allegations of injury. Similarly, standing exists to attempt to vindicate arguably protected interests. . . . Standing is established by showing that the party claiming it is authorized by statute to bring an action, in other words, statutorily aggrieved, or is classically aggrieved. . . . [Statutory] [s]tanding concerns the question [of] whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question. . . .

"The fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: [F]irst, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the challenged action], as distinguished

from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Footnote omitted; internal quotation marks omitted.) *Handsome, Inc.* v. *Planning & Zoning Commission*, 317 Conn. 515, 525–26, 119 A.3d 541 (2015).

"An action for abuse of process lies against any person using a legal process against another in an improper manner or to accomplish a purpose for which it was not designed. . . . Because the tort arises out of the accomplishment of a result that could not be achieved by the proper and successful use of process, the Restatement Second (1977) of Torts, § 682, emphasizes that the gravamen of the action for abuse of process is the use of a legal process . . . against another primarily to accomplish a purpose for which it is not designed . . . . Comment b to § 682 explains that the addition of primarily is meant to exclude liability when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." (Internal quotation marks omitted.) *Rogan* v. *Rungee*, 165 Conn. App. 209, 220, 140 A.3d 979 (2016). "[A]lthough the definition of process may be broad enough to cover a wide range of judicial procedures, to prevail on an abuse of process claim, the plaintiff must establish that the defendant used a judicial process for an improper purpose." (Emphasis omitted.) *Larobina* v. *McDonald*, 274 Conn. 394, 406–407, 876 A.2d 522 (2005). As our Supreme Court has observed, "the elements of abuse of process . . . are less stringent than the elements

of vexatious litigation. Specifically, unlike the tort of vexatious litigation, a claim for abuse of process does not require termination of the underlying litigation in favor of the plaintiff." *MacDermid, Inc.* v. *Leonetti*, 310 Conn. 616, 633, 79 A.3d 60 (2013).

In the present case, the court resolved the issue of standing on the basis of the complaint alone, not in conjunction with undisputed facts in the record or the court's resolution of disputed facts. Accordingly, our analysis of the issue of standing is limited to the facts alleged in the complaint. Beyond our duty to interpret the facts alleged in the complaint, as well as the facts implied by the allegations in the complaint, in the light most favorable to the plaintiff, we are mindful in our de novo review of the complaint that "[t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically . . . ." (Internal quotation marks omitted.) *M&T Bank* v. *Lewis*, 349 Conn. 9, 31 n.10, 312 A.3d 1040 (2024). "[W]e long have eschewed the notion that pleadings should be read in a hypertechnical manner. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory [on] which it proceeded, and do substantial justice between the parties. . . . Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means, but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational comprehension." (Internal quotation marks omitted.) *Hepburn* v. *Brill*, 348 Conn. 827, 848, 312 A.3d 1 (2024). This method of interpreting the complaint applies with greater force in light of the fact that the plaintiff appeared before the court as a self-represented party.[4] Finally, we observe the well established principle that, "in determining whether a court

---

[4] Connecticut courts adhere to the modern trend of interpreting pleadings broadly and realistically in part "to ensure that [self-represented] litigants

has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Fountain of Youth Church, Inc.* v. *Fountain*, 225 Conn. App. 856, 867,    A.3d    (2024).

As set forth previously in this opinion, the plaintiff alleged in her complaint that, without any authorization by Seaport, the defendant filed an appearance on behalf of Seaport, who was an "alleged lienholder" and a party to the foreclosure action that had been brought against her in the Superior Court. The plaintiff also alleged that, between November 17, 2018, and July 1, 2019, the defendant "filed numerous motions, notices and objections on behalf of Seaport . . . ." In paragraph 10 of her complaint, the plaintiff alleged that the defendant engaged in this conduct "to cause annoyance, alarm, embarrassment, and distress on the part of the plaintiff . . . ." In paragraph 11 of her complaint, the plaintiff alleged that the defendant engaged in this conduct "to increase the costs the plaintiff in the [foreclosure] action would charge or assess during the litigation, which would be charged to the [present] plaintiff . . . ." In paragraph 12 of her complaint, the plaintiff alleged that the defendant engaged in this conduct "to obstruct, thwart, and otherwise impair any possibility that the plaintiff could enter into a modification agreement to save her home from foreclosure . . . ." In paragraph 13 of her complaint, the plaintiff alleged that the defendant engaged in this conduct "to prevent the plaintiff from taking any action to defend against the [foreclosure] action, with the objective of rendering the plaintiff homeless . . . ." The plaintiff also alleged that none of the defendant's filings "relate[d] at all in any way to the claims of the plaintiff [in the foreclosure

receive a full and fair opportunity to be heard, regardless of their lack of legal education and experience . . . ." (Internal quotation marks omitted.) *Donald G.* v. *Commissioner of Correction*, 224 Conn. App. 93, 104, 311 A.3d 187, cert. denied, 349 Conn. 902, 312 A.3d 585 (2024).

action] or the defenses alleged to the [foreclosure] action." Moreover, the plaintiff alleged that Seaport "alleged no claim in the [foreclosure] action and has no practical relief to obtain, that could be obtained, or that it has or had authorized the defendant to attempt to obtain on its behalf in the [foreclosure] action." Finally, in her prayer for relief, the plaintiff sought damages and relief against the defendant from "engaging in the *abuse of process* as complained of herein . . . ." (Emphasis added.)

We disagree with the trial court's conclusion that the plaintiff's complaint was merely based on the allegation that the defendant illegally or without authority represented Seaport in the foreclosure action and that the plaintiff had failed to allege conduct on the part of the defendant that has injured, or will likely injure, a specific, personal, and legal interest of the plaintiff. The factual allegations in the plaintiff's complaint, when viewed in the light most favorable to her as the pleader, and construed both broadly and realistically, were sufficient to demonstrate the possibility that the plaintiff had a specific, personal, and legal interest in the defendant's conduct in the foreclosure action. The allegations were also sufficient to demonstrate the possibility that her specific, personal, and legal interest had been specially and injuriously affected by the defendant's conduct. The plaintiff plainly alleged that the defendant had made use of a legal process and that she did so primarily to accomplish purposes for which it was not designed and for purposes that were detrimental to the plaintiff. Specifically, the plaintiff alleged that the defendant's motions, notices, and objections were not related to a proper purpose in connection with the practical relief that Seaport could obtain by operation of law in the foreclosure action but that the defendant had used those procedural devices for the improper purposes that the plaintiff alleged in paragraphs 10 through 13

of her complaint. Setting aside the plaintiff's allegation that, in the foreclosure action, the defendant represented Seaport without its authorization, the plaintiff alleged that the defendant had caused her various types of harm. Although it is not dispositive of our analysis, the plaintiff characterized the conduct of which she complained as "abuse of process . . . ." Thus, the plaintiff's factual allegations in her complaint sufficiently established classical aggrievement. Accordingly, the court improperly determined that it lacked subject matter jurisdiction because the plaintiff lacked standing to bring the action.

II

We next address the plaintiff's claim that the court erred in "denying [her motion for] summary judgment." We decline to review this claim.

The following additional procedural history is relevant to this claim. On November 12, 2019, the plaintiff filed a motion for summary judgment as to liability only and a supporting memorandum of law. On June 13, 2020, the court, *S. Murphy, J.*, marked the motion off due to concerns and restrictions related to the COVID-19 pandemic. The court noted that the parties had the right to reclaim the motion "with affirmative language regarding their agreement to have the motion taken on the papers or at such time as the courts begin hearing arguable matters on short calendar."

On July 31, 2020, the plaintiff, relying on the fact that the defendant had not filed an opposition to the motion for summary judgment, filed a caseflow request seeking to have the motion for summary judgment taken on the papers. On August 4, 2020, the defendant filed what she characterized as an "initial procedural objection" to both the motion for summary judgment and the caseflow request related thereto. The defendant argued

that the request to have the motion for summary judgment taken on the papers contravened her right to a hearing on the motion and that ruling on the motion for summary judgment was inappropriate in light of the fact that the court had not yet ruled on her pending motion to dismiss that she had filed in October, 2019. The defendant represented that, if the court denied her motion to dismiss, she was prepared to file a substantive objection to the motion for summary judgment within thirty days. By orders of August 7, 2020, the court denied the plaintiff's caseflow request and sustained the defendant's objection thereto.[5]

After the court, *Spallone, J.*, denied the defendant's first motion to dismiss on February 3, 2022, the defendant filed a second motion to dismiss on June 20, 2022. The record reflects that, on June 9, 2022, Judge Spallone issued an order regarding the pending motion for summary judgment that stated: "The court is taking no action at this time on the plaintiff's motion for summary judgment . . . . This matter is currently stayed. Such stay is subject to a motion to reconsider, which will be scheduled for a hearing." The record does not reflect that the plaintiff brought a motion to reconsider this ruling. Thereafter, the court, *Goodrow, J.*, granted the defendant's second motion to dismiss on October 28, 2022. That ruling was the subject of the claim addressed in part I of this opinion.

It is important to identify the ruling, if any, that is being challenged by the plaintiff, for "[w]e cannot pass on the correctness of a trial court ruling that was never made." *Fischel* v. *TKPK, Ltd.*, 34 Conn. App. 22, 26, 640 A.2d 125 (1994). The plaintiff's brief is murky in this respect. The court did not consider, let alone deny, her motion for summary judgment. In this appeal, the

---

[5] The court file reflects that the caseflow request and the objection thereto were denied "by the court."

plaintiff does not challenge the propriety of the court's denial of her caseflow request on August 7, 2020. Rather, in her appellate brief, the plaintiff specifically claims error on the part of Judge Spallone, for she states that "[t]he . . . trial court (*Spallone, J.*) found that subject matter jurisdiction existed and erred in denying summary judgment that remained unopposed for several years." She thereafter argues that Practice Book §§ 17-44, 17-45 and 17-49 "required" the court to grant her motion in light of the fact that she demonstrated her entitlement to judgment in her favor as a matter of law and "there was no opposition whatsoever" within forty-five days of the filing of the motion.

To the extent that the plaintiff raises a claim of error related to Judge Spallone, the only ruling that was made by him that was tangentially related to her motion for summary judgment was his order of June 9, 2022, staying consideration of the motion.[6] In her brief, however, the plaintiff does not specifically identify this ruling, nor does she attempt to demonstrate that the court's ruling to defer consideration of her summary judgment motion at that time amounted to an abuse of its discretion. She does not address the myriad possible reasons on which the court may have relied in determining that the court's action was appropriate in June, 2022, but merely argues that summary judgment was a proper remedy. Even if we had an adequate record of the factual and legal basis underlying the court's imposition of a stay, the plaintiff has failed in her brief to adequately challenge the propriety of that specific ruling. "For a reviewing court to judiciously and efficiently . . . consider claims of error raised on appeal . . . the parties

---

[6] We note that, after she filed the present appeal, the plaintiff filed six motions for articulation. In one of those motions, she asked Judge Spallone to articulate with respect to his June 9, 2022 order. Judge Spallone denied the motion for articulation. The plaintiff did not thereafter file a motion for review in this court related to that ruling.

must clearly and fully set forth their arguments in their briefs." (Internal quotation marks omitted.) *C. B.* v. *S. B.*, 211 Conn. App. 628, 630, 273 A.3d 271 (2022); see also *Parnoff* v. *Mooney*, 132 Conn. App. 512, 518, 35 A.3d 283 (2011) ("[i]t is not the role of this court to undertake the legal research and analyze the facts in support of a claim or argument when it has not been briefed adequately" (internal quotation marks omitted)).

The judgment is reversed and the case is remanded for further proceedings.

In this opinion the other judges concurred.